UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| CHRISTOPHER MICHAEL JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:22-cv-00861-JPH-KMB |
| | ) | |
| STINE, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| INDIANA DEPARTMENT OF CORRECTION | ) | |
| | ) | |
| Interested Party. | ) | |

**Order Denying Motion for Preliminary Injunction**

Christopher Johnson, an Indiana Department of Correction (IDOC) inmate, alleges that prison medical staff have been deliberately indifferent to his serious medical needs by failing to provide him with specific pain medication that he has demanded and otherwise failed to treat his medical conditions. Mr. Johnson has moved for a preliminary injunction, requesting that the Court order the defendants to provide him morphine, oxycodone, and a higher daily dose of Gabapentin than he currently receives. For the reasons below, Mr. Johnson's motion for preliminary injunction, dkt. [10], is **DENIED**.

## I. Procedural History

Mr. Johnson's complaint names four defendants: (1) Dr. Stine, (2) Centurion of Indiana LLC, (3) Nurse Allasya, and (4) Nurse Practitioner Robert Duprey. He alleges that these defendants were deliberately indifferent to

his serious medical needs in violation of the Eighth Amendment when they refused to provide him with morphine, the proper dosage of Gabapentin, blood pressure medication, a renal diet, a back brace, and a shower chair.

Mr. Johnson filed a motion for preliminary injunction with his complaint. The motion seeks an order requiring the defendants to provide him twice daily morphine, thrice daily oxycodone 20 milligrams, and thrice daily Gabapentin 1200 milligrams.[1] Dkt. 10. The defendants filed a timely response. Dkt. 26. Mr. Johnson sought several extensions of time to file his reply before ultimately providing an oral reply in support of the motion at a telephonic status conference. Dkt. 50.

## II.    Factual Background

Mr. Johnson attests that he suffers from chronic kidney disease, neuropathy due to past gunshot wounds, back pain due to a past gunshot wound, a permanent foot injury due to a past gunshot wound, post-traumatic stress disorder, anxiety, and deep depression. Dkt. 10 at 3–6. This Order focuses on Mr. Johnson's symptoms of pain, as pain medication is the subject of his motion for preliminary injunction.

---

[1] Mr. Johnson's motion for preliminary injunction also mentions the mental health medications Wellbutrin and Buspar. Dkt. 10 at 2. However, his complaint in this action does not raise any claims related to the denial of these medications or his mental health treatment generally. *See* dkt. 1. Indeed, Mr. Johnson is litigating such claims—and a separate motion for preliminary injunction—in another action in this Court. *Johnson v. Valle*, 1:22-cv-837-JPH-KMB (S.D. Ind). To the extent Mr. Johnson seeks preliminary injunctive relief for a claim not alleged in his complaint in his case, the request is **DENIED**. *See De Beers Consol. Mines v. United States*, 325 U.S. 212, 220 (1945) (preliminary injunction not appropriate when "it deals with a matter lying wholly outside the issues in the suit"); *see Ayala v. Kruse*, 2:19-cv-348-JPH-MJD, 2020 WL 4904761 (S.D. Ind. Aug. 20, 2020) (same).

**A.    Mr. Johnson's conditions and past treatment**

From December 22, 2017 to January 2, 2018, Mr. Johnson was hospitalized at Eskenazi Hospital following multiple gunshot wounds and hemorrhagic shock. Dkt. 26-1 at 2. He underwent surgery and postoperatively developed an acute kidney injury. *Id.* Specialists concluded the acute kidney injury was prerenal in nature, and Mr. Johnson recovered with fluid resuscitation. *Id.* X-rays taken at Eskenazi revealed that Mr. Johnson had a left calcaneus heel fracture. *Id.* Mr. Johnson received a walking boot and was instructed to not bear weight on his left foot for six weeks. *Id.* By the time of discharge, Mr. Johnson was tolerating a regular diet and his pain was adequately controlled. *Id.* Doctors at Eskenazi prescribed him pain medication, including a one-week prescription for oxycodone as needed for severe pain. *Id.* at 3.

In mid-to-late 2018, Mr. Johnson was incarcerated at the Marion County Jail. *Id.* at 4–6. Mr. Johnson returned to Eskenazi in April 2019. *Id.* at 7–8. He had been taken off Gabapentin, but the specialist renewed his prescription. *Id.* at 7.

In June 2019, Mr. Johnson was transferred to the IDOC's Regional Diagnostic Center. His transfer paperwork included prescriptions of aspirin and Gabapentin for pain, Wellbutrin and Lexapro for mental health needs, and various other medications. Dkt. 26-1 at 9–10. In an intake questionnaire, Mr. Johnson denied having chronic kidney disease. *Id.* at 15. Plaintiff reported a peanut allergy and was placed on a peanut-free diet within his first week. *Id.* at 25.

A doctor met with Mr. Johnson on his second day at the facility. *Id.* at 19. Mr. Johnson threatened the doctor's job and medical license if she did not prescribe him Gabapentin for pain. *Id.* Despite the threat, the doctor did not prescribe him Gabapentin. *Id.* She prescribed him Celexa for depression and anxiety. *Id.*

The next day, another provider treated Mr. Johnson for his foot injury and hypertension. *Id.* at 21. The provider examined his foot and found normal circulation with no edema, redness or open areas. *Id.*

In late July 2019, a provider treated Mr. Johnson. *Id.* at 28. The provider diagnosed Mr. Johnson with complex regional pain syndrome and requested back x-rays. *Id.* The x-rays showed bullet fragments "scattered throughout the soft tissues of the lower lumbar region," and no other abnormalities. Dkt. 26-2 at 1.

In August 2019, a provider treated Mr. Johnson. *Id.* at 2. The provider noted that Mr. Johnson had been refusing all pain medications other than Gabapentin. *Id.*

### B.    Defendants' treatment from January 2022 through the Present

In January 2022, Mr. Johnson was transferred to Pendleton Correctional Facility.[2] He had existing prescriptions for Buspar, Wellbutrin, and the pain medication Amitriptyline. *Id.* at 10. Later in the month, Mr. Johnson was treated

---

[2] Mr. Johnson has since been transferred to Westville Correctional Facility. However, the defendants do not argue that his motion for preliminary injunction is moot on this basis, and it appears that at least one defendant—Centurion Health of Indiana, LLC—retains authority to modify his health care treatment.

by a nurse during a sick call. Mr. Johnson reported that he required a renal diet due to a diagnosis of stage 3 kidney failure. *Id.* at 14. The nurse referred him to a nurse practitioner, who ordered lab tests to diagnose any kidney issues. *Id.* The lab results showed normal kidney function. *Id.* at 15−16.

In February 2022, NP Duprey treated Mr. Johnson for complaints of pain. NP Duprey's examination revealed a normal cervical, lumbar, and thoracic spine. *Id.* at 24. Mr. Johnson had no swelling or edema in his lower extremities. *Id.* He was in a wheelchair but was able to rise without assistance. *Id.* at 25. NP Duprey diagnosed Mr. Johnson with complex regional pain syndrome in his lower leg. *Id.* at 24. He ordered increased Lisinopril for pain and made a non-formulary request for Gabapentin. *Id.* at 25.

By March 14, 2022, Mr. Johnson had a prescription for twice daily Gabapentin 1200 milligrams. *Id.* at 28. Mr. Johnson requested morphine and a renal diet. *Id.* at 27. A non-defendant nurse referred Mr. Johnson to a provider. *Id.* at 28. Two days later, NP Duprey treated Mr. Johnson. NP Duprey noted the request for morphine but did not prescribe it. *Id.* at 29. NP Duprey also noted that a renal diet was not warranted, given the lack of evidence for chronic kidney failure. *Id.*

Sometime in March, Mr. Johnson acquired a diet card that incorrectly showed he required a renal diet. *Id.* at 30. Medical providers confiscated the card and provided an accurate one. *Id.*

In May 2022, a non-defendant nurse treated Mr. Johnson for complaints of pain and kidney failure. Mr. Johnson requested morphine, an increased

dosage of Gabapentin, a renal diet, a shower chair, and a back brace. *Id.* at 10. A few days later, a non-defendant nurse practitioner treated Mr. Johnson. She concluded that Mr. Johnson did not present a need for morphine, a renal diet, a shower chair, or a back brace. *Id.* at 12–13.

### III.    Legal Standard

Injunctive relief under Federal Rule of Civil Procedure 65 is "an exercise of very far-reaching power, never to be indulged in except in a case clearly demanding it." *Cassell v. Snyders*, 990 F.3d 539, 544 (7th Cir. 2021). To obtain such extraordinary relief, the party seeking the preliminary injunction carries the burden of persuasion by a clear showing. *See id.*; *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997).

Determining whether a preliminary injunction is appropriate under Rule 65 involves a two-step inquiry, with a threshold phase and a balancing phase. *Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*, 858 F.3d 1034, 1044 (7th Cir. 2017). At the threshold phase, the moving party must show that: (1) without the requested relief, it will suffer irreparable harm during the pendency of its action; (2) traditional legal remedies would be inadequate; and (3) it has "a reasonable likelihood of success on the merits." *Id.* "If the moving party cannot establish . . . these prerequisites, a court's inquiry is over and the injunction must be denied." *Abbott Laboratories v. Mead Johnson & Co.*, 971 F.2d 6, 12 (7th Cir. 1992).

If the movant satisfies the threshold requirements, the Court proceeds to the balancing phase "to determine whether the balance of harm favors the

moving party or whether the harm to other parties or the public sufficiently outweighs the movant's interests." *Whitaker*, 858 F.3d at 1044. This "involves a 'sliding scale' approach: the more likely the plaintiff is to win on the merits, the less the balance of harms needs to weigh in his favor, and vice versa." *Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020).

Because Mr. Johnson is a prisoner, the Prison Litigation Reform Act "circumscribes the scope of the court's authority to enter an injunction." *Westefer v. Neal*, 682 F.3d 679, 683 (7th Cir. 2012). "Preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2).

### IV.    Discussion

Mr. Johnson has not met the threshold elements for a preliminary injunction.

### A.    Likelihood of success on the merits

"A movant's showing of likelihood of success on the merits must be strong." *Tully v. Okeson*, 977 F.3d 608, 613 (7th Cir. 2020) (cleaned up). A "better than negligible" likelihood of success is not enough. *Illinois Republican Party v. Pritzker*, 973 F.3d 760, 762−63 (7th Cir. 2020). The precise likelihood of success required depends in part on the balance of harms: "the more likely the plaintiff is to win on the merits, the less the balance of harms needs to weigh in his favor, and vice versa." *Mays*, 974 F.3d at 818.

Mr. Johnson has not shown a strong likelihood of success on the merits. "[T]o prevail on a deliberate indifference claim, a plaintiff must show '(1) an objectively serious medical condition to which (2) a state official was deliberately, that is subjectively, indifferent.'" *Johnson v. Dominguez*, 5 F.4th 818, 824 (7th Cir. 2021) (quoting *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016)).

Deliberate indifference requires more than negligence or even objective recklessness. *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016) (en banc). Plaintiff "must provide evidence that an official actually knew of and disregarded a substantial risk of harm." *Id.* "Of course, medical professionals rarely admit that they deliberately opted against the best course of treatment. So in many cases, deliberate indifference must be inferred from the propriety of their actions." *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 241 (7th Cir. 2021) (cleaned up). "[A] jury can infer deliberate indifference when a treatment decision is so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment." *Id.* (cleaned up).

Here, the defendants and other medical providers at Pendleton Correctional Facility regularly consulted with Mr. Johnson and offered medication to manage his pain. Nevertheless, Mr. Johnson contends that they were deliberately indifferent because they did not provide the specific prescription pain medications that he demands. Specifically, he asserts that morphine, oxycodone, and a daily Gabapentin dose of 3600 milligrams form the only acceptable treatment regime for his pain. Dkt. 10 at 1–2. But "an inmate is

not entitled to demand specific care, and medical professionals may choose from a range of acceptable courses based on prevailing standards in the field." *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019).

Mr. Johnson also suggests that morphine and oxycodone are necessary because they "won't cause more damage to my kidneys." Dkt. 10 at 4. However, the evidence indicates that Mr. Johnson does not have chronic kidney disease. Dkt. 26-2 at 15−16. And even if he did, the defendants have presented evidence that morphine and Gabapentin would not be appropriate for a patient with such a condition. Dkt. 26-3 at 13 ("[Patients] with advanced [renal] disease generally should avoid BOTH gabapentin and morphine at all times [due to] the decreased ability to eliminate the med from their systems.").

In short, Mr. Johnson has not shown a reasonable likelihood that he can prove the defendants' choice to prescribe him a 2400-milligram daily dose of Gabapentin for pain is "so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment." *Dean*, 18 F.4th at 241 (cleaned up). Accordingly, he has not shown a strong likelihood of success on the merits.

### B.    Irreparable harm and inadequacy of other remedies

For similar reasons, Mr. Johnson has not made the required showings of irreparable harm or inadequacy of legal remedies. Aside from his own lay opinion, Mr. Johnson has not put forth evidence that morphine, oxycontin, and a higher dose of Gabapentin are required to manage his pain in a constitutionally acceptable manner. Thus, he has not shown that judicial intervention in his

medical treatment is required to prevent irreparable harm or that any other form of relief would be inadequate.

## V.    Conclusion

For these reasons, Mr. Johnson's motion for preliminary injunction, dkt. [10], is **DENIED**.

**SO ORDERED.**

Date: 3/23/2023

_James Patrick Hanlon_
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email

CHRISTOPHER MICHAEL JOHNSON
270993
WESTVILLE - CF
WESTVILLE CORRECTIONAL FACILITY
Inmate Mail/Parcels
5501 South 1100 West
WESTVILLE, IN 46391